Date signed March 30, 2012



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | | |
|---|---|---|---|
| In Re: | * | | |
| | * | Case No. | 10-21513-TJC |
| Lee J. Jundanian, | * | Chapter | 11 |
| | * | | |
| Debtor | * | | |
| ************************************* | * | | |
| Caymus Ventures, LLC, et al., | * | | |
| | * | | |
| | * | | |
| Plaintiffs, | * | | |
| vs. | * | Adversary   No.   11-00185 |
| Lee J. Jundanian | * | | |
| | * | | |
| | * | | |
| Defendant. | * | | |

### <u>MEMORANDUM OF DECISION</u>

Caymus Ventures, LLC ("Caymus") and Larry Brown ("Brown") (collectively, the "Plaintiffs") filed a two count complaint in the Circuit Court for Montgomery County against the debtor, Lee J. Jundanian ("Defendant"), Case No. 343814.  Defendant filed a notice of removal

1

and thereafter an answer to the complaint.  Now before the Court is Plaintiffs' motion for

summary judgment, opposed by Defendant.  Plaintiffs contend that Defendant, a member in

Caymus when he filed his chapter 11 petition, lost the right to participate in the management of

Caymus because, among other reasons, he reacquired his membership interest through an auction

held under the Defendant's confirmed plan of reorganization and the operating agreement does

not allow the transfer of management rights without the consent of the remaining member.

Plaintiffs therefore contend that Defendant only retains the right to receive distributions on

account of his membership interest.  For the reasons stated herein, the Court will grant summary

judgment in favor of Plaintiffs.

### Statement of Material Facts Not in Dispute

Defendant filed a voluntary petition for relief under chapter 11 on May 21, 2010.  At that

time, Defendant and Brown were the only two members of Caymus, each holding a 50% interest.

Caymus is a Maryland limited liability company whose purpose is to purchase, exchange

and acquire real and personal property for investment purposes.  Brown and Defendant executed

the operating agreement of Caymus (the "Operating Agreement") on September 23, 2003.

Article 6 of the Operating Agreement contains restrictions on transfer.  Section 6.1

provides:

> Restrictions on Transfer. Except as permitted in this Agreement, no Member shall
> sell, assign, transfer (with or without consideration), mortgage, or pledge the
> Member's interest in the Company. Any attempted disposition, whether voluntary
> or involuntary, not made in compliance with this Agreement, shall be of no effect,
> and the attempted transferee shall have no rights in the Company.  For purposes
> of this Agreement, the term "involuntary transfer" includes the transfer or
> disposition of all or a portion of a Member's interest under judicial order, legal
> process, execution, attachment or enforcement of a pledge, trust or other security
> interest.

Operating Agreement, §6.1.

2

Section 6.2 addresses transfers by members.  It provides, in pertinent part:

(a) <u>Restrictions on Transfers</u>.  Any Member may transfer all or any portion of its Percentage Interest (referred to in this paragraph as "Transferring Member") to a Member or a non-Member provided: (i) the transferee shall have no voting rights and no right to serve as a Manager and the transferee shall acknowledge the same in writing.  For purposes of this Section 6.2(a), the transfer by one of the original Members to a Person other than the other original member, shall be deemed to be a transfer by a Member which is subject to the provisions of this Section 6.2(a).

**************************************

(c) Notification Required.  Any Member (or underlying manager of a Member) which desires to transfer all or any portion of its Percentage Interest in accordance with Subsections (a) or (b) immediately above, shall provide the Company with a written statement which shall include (i) the name, address and telephone number of the proposed transferee, (ii) if requested by the Remaining Members, an opinion from counsel to the Company, to be paid for by the Transferring Member, stating the proposed transfer can be accomplished without registration of the Company under federal and state securities laws and (iii) the proposed transfer date which shall not be sooner than thirty (30) days after the date of the notice.  If there is an involuntary transfer of all or any portion of a Member's Percentage Interest, the involuntary transferee shall be bound by this Agreement and specifically clause (i) of Subsection 6.2(a).[1]

Operating Agreement, §6.2.

The Operating Agreement incorporates by reference the Maryland Limited Liability Company Act, title 4A of the Corporations and Associations Article of the Maryland Annotated Code (the "Act").[2]

---

[1] The Operating Agreement defines "Percentage Interest" in Section 1.2(j) as "the percentage participation set forth opposite the name of such member under the column "Percentage of Interest" in Exhibit A hereto, as amended from time to time."

[2] The Act is codified at Md. Code Ann., Corps. & Ass'ns., § 4A-101, *et seq.*

The Defendant listed his interest in Caymus as personal property on Schedule B. *See* Docket No. 23 in Case No. 10-21513 at 5.[3] The Operating Agreement is not listed as an executory contract on Schedule G. *Id*. at 16.

The Court confirmed the Defendant's plan of reorganization (the "Plan") by order entered on January 25, 2011. Docket No. 166 in Case No. 10-21513. Article VIII, section 8.1 of the Plan provides that:

> On the Effective Date, and except as provided in Article 9.4, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court prior to the Effective Date, or (ii) is subject to separate motion to assume or reject (or terminate or modify, as the case may be) filed under Article 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

Plan, §8.1 at p. 20.

No motion was filed to assume the Operating Agreement or assign the Defendant's interest in Caymus.

The Plan provided for an auction sale of the Defendant's ownership interests in certain entities, including Caymus. The Plan provided that the:

> auction sale will be held at the office of Debtor's counsel within ten (10) days after the Confirmation Date for all of the Companies (the "Auction"). The [A]uction shall proceed with minimum bid increments of $1,000. The party who submits the highest all cash bid at the [A]uction shall make immediate cash payment to the Estate and (if the Debtor is not the winning bidder) the Debtor shall execute those documents reasonably necessary to convey the interest in question to the winning bidder.

---

[3] All docket citations herein are to the docket in this adversary proceeding, unless otherwise noted. The Court takes judicial notice of the schedules filed by the Defendant as well as the Defendant's plan of reorganization, discussed subsequently. Fed. R. Evid. 201.

Plan, §7.2 at p. 18.  The Defendant's interest in Caymus was included in the term "Companies"

under the Plan.  *See* Plan, §1.12 at p. 3.  The proceeds of the Auction sale, along with other assets

of the Defendant, were the funding sources under the Plan.

The notice of the Auction (the "Auction Notice") provided

> **Auction**. If the Plan is confirmed, an auction sale will be held at the office of Debtor's counsel, Whiteford Taylor & Preston, LLP, Seven Saint Paul Street, Baltimore, Maryland 21202, 19th Floor, on January 27, 2011 at 10:00 a.m.. The auction shall proceed with cash bids only and minimum bid increments of $1,000. All sales pursuant to the auction shall be "as is, where is and without representation or warranty of any kind." As a result, all potential bidders should avail themselves of the due diligence opportunity set forth above and should also consult legal counsel of their choice. The Debtor is permitted to participate in the auction.

> **Closing.** The party who submits the highest all cash bid at the auction shall make immediate cash payment to the estate and, if the Debtor is not the winning bidder, the Debtor shall execute those documents reasonably necessary to convey the interest in question to the winning bidder.

Docket No. 15, Ex. F.

Attached to the Auction Notice was a list of the entities in which the Defendant held an

ownership and/or investment interest, including Caymus.  For the interests that the Defendant

wished to retain, he set forth the amount that he would pay, from funds owned jointly by himself

and his spouse.  The amount Defendant listed for Caymus was $2,500.  Therefore, under the

terms of the Auction, Defendant's opening bid for the Caymus interest was $2,500.

Brown attended the Auction, and bid on and acquired an interest owned by the Defendant

in a different entity.  The facts concerning the actual bidding at the Auction on the Caymus

interest are not addressed in detail by the parties, but it is undisputed that Jundanian acquired the Caymus interest through the Auction.[4]

During the bankruptcy case, Brown requested Defendant to execute an amendment to the Operating Agreement that provided that Defendant "while maintaining his share of the Company, shall no longer have any role of authority with regards to management or other affairs of the Company.  Rather, he shall solely maintain his rights to profits, losses and membership distributions." Docket No. 15, Ex. D.  Defendant refused to sign the amendment.

Plaintiffs filed the Complaint on February 11, 2011 seeking (1) declaratory judgment that Defendant, by virtue of his bankruptcy filing, has no right to vote or otherwise participate in the management of Caymus, only the right to receive distributions from Caymus, and (2) an injunction directing that the Defendant acknowledge his lack of participation rights and prohibiting him from exercising any rights as a member in Caymus other than the right to receive distributions.

The Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1441, 1446 and 1452 and Fed. R. Bankr. P. 9027.  Jurisdiction is proper pursuant to 28 U.S.C. §1334(b).  This matter arises under Title 11 in that the dispute requires the determination of the applicability, or inapplicability, of sections of the Bankruptcy Code to a transaction that occurred pursuant to a confirmed plan of reorganization.  This is a core matter under 28 U.S.C §157(A) and (O).

## Conclusions of Law

The standards for summary judgment are well established:

> In bankruptcy, summary judgment is governed in the first instance by Federal
> Rule of Bankruptcy Procedure 7056, which expressly incorporated into

---

[4] Defendant's opposition brief states that "Plaintiffs themselves unsuccessfully bid on the [Defendant's] ownership interest in Caymus…" Docket No. 15 at p. 2.  This statement is not disputed by Plaintiffs.

bankruptcy proceedings the standards of Federal Rule of Civil Procedure 56. A
court may award summary judgment only when there is no genuine issue as to
any material fact and the moving party is entitled to judgment as a matter of
law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *In re Apex
Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). In evaluating a summary
judgment motion, a court "must consider whether a reasonable jury could find
in favor of the non-moving party, taking all inferences to be drawn from the
underlying facts in the light most favorable to the non-movant." *Apex*, 190 F.3d
at 633. In doing so, a court is not entitled to either weigh the evidence or make
credibility determinations. *See Anderson*, 477 U.S. at 255 ("Credibility
determinations, the weighing of the evidence, and the drawing of legitimate
inferences from the facts are jury functions, not those of a judge"). If the
moving party is unable to demonstrate the absence of any genuine issue of
material fact, summary judgment is not proper and must be denied. *See Celotex
Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

*In re French*, 499 F. 3d 345, 351-52 (4th Cir. 2007).

Here, the parties do not dispute that prior to filing, the Defendant's interest in Caymus
gave the Defendant various rights and benefits. They agree that the Defendant held the right to
receive distributions from Caymus (referred to herein as the "Distribution Rights"). Plaintiffs do
not dispute that a member is allowed to sell the Distribution Rights under §6.1 and §6.2 of the
Operating Agreement. Therefore, Plaintiffs do not dispute that the estate succeeded to the
Distribution Rights when the petition was filed, and that the Distribution Rights were transferred
to the Defendant in the Auction.

The parties also agree that prior to filing, the Defendant held the right to vote or
otherwise participate in the management of Caymus (referred to herein as the "Voting and
Management Rights"). The dispute in this adversary proceeding is over the Voting and
Management Rights. Plaintiffs contend that the estate did not succeed to the Voting and
Management Rights upon the filing of the petition and that, even if it did, it did not transfer the

7

Voting and Management Rights to the Defendant in the Auction.  Defendant argues that, because

he was the successful bidder at the Auction, he retained the Voting and Management Rights.

***The Estate Succeeded to the Voting and Management Rights***.

Plaintiffs rely on both state law and the Operating Agreement to support their contention

that the estate did not succeed to the Voting and Management Rights.  Specifically, Plaintiffs'

argue that, pursuant to §4A-606(3)(ii) of the Act, the Voting and Management Rights were

extinguished upon Defendant's filing of the bankruptcy petition.[5]  Plaintiffs also argue that §6.2

of the Operating Agreement, which restricts the transfer of the Voting and Management Rights,

barred the Voting and Management Rights from being transferred into the estate upon the filing.

The Court disagrees.

Section 541 of the Code broadly defines property of the estate as including, *inter alia*,

"all legal or equitable interests of the debtor in property as of the commencement of the case." 11

---

[5] Section 4A-606(3)(ii) of the Act provides:

> A person ceases to be a member of a limited liability company upon the occurrence of any of the
> following events . . . .
>
> (3) Unless otherwise provided in the operating agreement or with the consent of all other
> members, the person:
>> (i)  Makes an assignment for the benefit of creditors;
>> (ii) Files a voluntary petition in bankruptcy;
>> (iii) Is adjudged bankrupt or insolvent or has entered against the person an order for relief
>> in any bankruptcy or insolvency proceeding;
>> (iv) Files a petition or answer seeking for that person any reorganization, arrangement,
>> composition, readjustment, liquidation, dissolution, or similar relief under any statute,
>> law, or regulation;
>> (v) Seeks, consents to, or acquiesces in the appointment of a trustee for, receiver for, or
>> liquidation of the member or of all or any substantial part of the person's properties; or
>> (vi) Files an answer or other pleading admitting or failing to contest the material
>> allegations of a petition filed against the person in any proceeding described in this
>> subsection…

Md. Code Ann., Corps. & Ass'ns., § 4A-606(3)(ii).

U.S.C. §541(a)(1).  This expansive definition encompasses rights arising from ordinary

contractual relationships, including a debtor's interest in a limited liability company.  *In re*

*Allentown Ambassadors, Inc.,* 361 B.R. 422, 436 (Bankr. E.D. Pa. 2007) (citing *Matter of*

*Daugherty Construction, Inc.,* 188 B.R. 607 (Bankr. D. Neb. 1995)).

> Section 541 further provides, in pertinent part, that:
>
> [A]n interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
>> (A) that restricts or conditions transfer of such interest by the debtor; or
>>
>> (B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. §541(c)(1).

Section 541(c)(1) overrides both the *ipso facto* provision in the Act and the restriction on

transfer provision in the Operating  Agreement.  The *ipso facto* provision contained in §4A-

606(3)(ii) of the Act, providing that a person ceases to be a member of a limited liability

company when they file a voluntary petition in bankruptcy, is invalidated by §541(c)(1) of the

Code.  The legislative history of §541 provides that subsection (c) "invalidates restrictions on the

transfer of property of the debtor, in order that all the interests of the debtor in property will

become property of the estate."  House Report No. 95-595, 95th Cong., 1st Sess. 368 (1977); *see*

Senate Report No. 95-989, 95th Cong., 2d Sess. 83 (1978).  The legislative history further

specifies that "[t]he provisions invalidated are those that restrict or condition transfer of the

debtor's interest, and those that are conditioned on a bankruptcy case…" *Id.  See  In re Garrison-*

*Ashburn*, 253 B.R. 700, 707-08 (Bankr. E.D. Va. 2000) (bankruptcy estate succeeded to all of the

debtor's rights, both economic and non-economic, in a limited liability company).  *See also In re Ehmann,* 319 B.R. 200, 206 (D.Ariz.2005) (holding that pursuant to §541(c), any interest of the debtor becomes property of the estate regardless of any agreement that would otherwise restrict or condition transfer of the debtor's interest, including "all of the rights and powers with respect to [the LLC] that the Debtor held as of the commencement of the case."); *In re LaHood*, 437 B.R. 330, 330 (C.D. Ill. 2010) (the debtor's entire interest in the limited liability company entered the bankruptcy estate pursuant to §541(c)(1) notwithstanding restriction on transfer provision contained in the operating agreement).

Accordingly, the Court concludes that the Voting and Management Rights became property of the estate upon the filing of the petition.

***The Auction Sale by the Estate***

Plaintiffs next argue that, even if the estate succeeded to the Voting and Management Rights, the restriction on transfer provisions in Article VI of the Operating Agreement barred the estate from selling them through the Auction.  The Defendant contends that the estate was authorized to transfer the Voting and Management Rights pursuant to §541(c)(1) or §365 of the Bankruptcy Code, notwithstanding the restriction on transfer provisions of the Operating Agreement.  For the reasons that follow, the Court concludes that neither §541(c)(1) nor §365 override the restriction on transfer provisions in the Operating Agreement and, as a result, "the transferee shall have no voting rights and no right to serve as a Manager." Operating Agreement, §6.2.

Defendant's contention under §541(c)(1) can be summarily dismissed.  By its plain terms, §541(c) governs what interests "become[] property of the estate."  Congress enacted §541(c) to eliminate barriers to the transfer of property into the estate, and not to void restrictions

10

on the transfer of property from the trustee to third parties. *Calvert v. Bongards Creameries (In re Schauer)*, 62 B.R. 526 (Bankr. D. Minn. 1986), aff'd, slip op. Jan. 1987 Civ No 5-86-195 slip op. at 4, aff'd, 835 F.2d 1222 (8th Cir. 1987). Simply stated, nothing in the language of §541(c)(1) addresses, much less authorizes, the transfer by the trustee of assets that are subject to prohibitions or restrictions on transfer. No case cited by Defendant is to the contrary.

The Defendant next argues that the Operating Agreement is an executory contract and that §365(c) overrides the restriction on transfer provision contained in Article 6 of the Operating Agreement.[6]  Plaintiffs respond that the Operating Agreement is not an executory contract, and even if it is, §365 does not apply.

Section 365 of the Code governs executory contracts and unexpired leases and generally provides that the trustee may assume or reject any executory contract or unexpired lease of the debtor, subject to court approval. 11 U.S.C. §365(a). The term "executory contract" is not defined in §365, however the 4th Circuit has adopted the so-called Countryman definition, which provides that a contract is executory if the "obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." *Gloria*

---

[6] Section 365(c) provides:

(c) The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

      (1)      (A) applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from or rendering performance to an entity other than the debtor or the debtor in possession, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties; and

            (B) such party does not consent to such assumption or assignment; or

      (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor, or to issue a security of the debtor; or

      (3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief.

*Manufacturing Corp. v. International Ladies' Garment Workers' Union,* 734 F.2d 1020, 1022

(4th Cir. 1984) (quoting Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn. L.

Rev. 439, 460 (1973).   Operating agreements of limited liability companies have been held to be

executory contracts; however there is no consensus amongst courts.  *See e.g., Allenton*

*Ambassadors, Inc. v. Northeast American Baseball, LLC (In re Allentown Ambassadors, Inc.),*

361 B.R. 422, 444 (E.D. Pa. 2007) (holding that the operating agreement of a chapter 11 debtor

LLC was an executory contract because the members had ongoing, material, unperformed

obligations to the company, including the duty to manage the LLC and make additional cash

contributions if deemed necessary); *In re DeLuca,* 194 B.R. 65, 77 (Bankr. E.D. Va. 1996);

*Matter of Daugherty Construction, Inc.,* 188 B.R. 607, 612 (Bankr. D. Neb. 1995) (finding LLC

members' continuing obligations to participate in the management of the company, as well as to

contribute capital in the event of a fiscal net loss, constituted executory obligations); *cf. In re*

*Garrison-Ashburn,* 253 B.R. 700, 708 (Bankr. E.D. Va. 2000) (concluding that an operating

agreement that merely provided the structure for the management of the company did not qualify

as an executory contract); *In re Ehmann*, 319 B.R. 200, 201 (Bankr. D. Az. 2005) (stating that a

contract that did not impose obligations on the members was not an executory contract); *In re*

*Tsiaoushis,* 383 B.R. 616, 619 (Bankr. E.D. Va. 2007) (stating that a tentative duty of a member

of an LLC is too speculative to be considered a material obligation for purposes of determining

whether the operating agreement is an executory contract).

　　　　The Court need not resolve whether the Operating Agreement was an executory contract.

Whether or not it was, §365 does not apply to the sale of the interest in Caymus.

　　　　Defendant did not identify the Operating Agreement as an executory contract on

Schedule G.  More significantly, the Plan provides that all executory contracts are deemed

rejected on its effective date if Defendant had not already assumed or assigned the executory contract. Defendant did not file a motion to assume, or assume and assign the Operating Agreement, and no order to that effect was entered. Accordingly, to the extent the Operating Agreement was an executory contract within the meaning of §365, it was rejected no later than the effective date of the Plan. Thus §365 is inapplicable to the sale of the Caymus interest in the Auction.

Section 6.1 of the Operating Agreement prohibits the transfer of the interest "[e]xcept as provided in [the Operating Agreement]." Section 6.2 allows members to transfer their economic interest, but explicitly provides that "the transferee shall have no voting rights and no right to serve as a [m]anager...." Defendant offers no other basis to override these restriction on transfer provisions. Therefore, these provisions control.

*Waiver*

Finally, the Defendant argues that the Plaintiffs waived any right to assert that the Voting and Management Rights were not transferred to the Defendant because the Plaintiffs did not object to the Plan or Auction Notice, and, in fact, Brown attended and participated at the Auction. This Court disagrees.

Under Maryland law, waiver "is the intentional relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, and may result from an express agreement or be inferred from circumstances. A waiver of a contractual provision must be clearly established and will not be inferred from equivocal acts or language." *Myers v. Kayhoe*, 391 Md. 188, 205 (2006) (internal quotations, emendations and citations omitted). Further,

13

> [m]ere silence, acquiescence, or inactivity is insufficient to show a waiver of contract rights where there is no duty to speak or act. . . .Forbearance to assert or insist upon a right does not, by itself, constitute waiver. A party's reluctance to terminate a contract upon a breach and its attempts to encourage the breaching party to adhere to its obligation under the contract should not ordinarily lead to a waiver of the innocent party's rights.

*Cambridge Technologies Inc. v. Argyle Industries, Inc.*, 146 Md. App. 415, 432-33 (2002).

Here, no reasonable fact finder could conclude that Plaintiffs' intentionally relinquished a known right. Firstly, Brown is not listed as a creditor of the estate and therefore was not entitled to, and did not, vote on the Plan. The Plan can have no *res judicata* effect as to him. *First Union Commercial Corp. v. Nelson, Mullins, Riley and Scarborough (In re Varat Enterprises, Inc.),* 81 F.3d 1310 (4th Cir. 1996) (noting that a confirmation order constitutes a final judgment on the merits with *res judicata* effect and further stating that a party for the purposes of former adjudication includes one who participates in a Chapter 11 plan confirmation proceeding).

More to the point, however, Defendant's waiver argument is based on the premise that Plaintiffs knew that the estate was selling the Voting and Management Rights at the Auction and did not object. But the Auction Notice expressly provided that the sale would be "as is, where is and without representation or warranty of any kind." By the time of the sale, the Plan had been confirmed and no motion to assume and assign the Operating Agreement had been filed. As stated above, the Plan expressly provided that any executory contract that was not assumed was rejected as of the effective date of the Plan. Accordingly, to the extent the Operating Agreement was an executory contract within the meaning of §365 of the Bankruptcy Code, it was rejected no later than the effective date of the Plan. Therefore, Defendant had no rational basis to believe that §365(c) could apply to the transaction.

14

Defendant points to no facts from which a fact finder could find that Brown conceded or agreed that the Voting and Management Rights were included in the interest being sold at the Auction. To the contrary, it appears from the record before the Court that Brown's position on the enforceability of the restriction on transfer provision has been consistent throughout. Defendant points out that Brown bid at the Auction, but does submit evidence to support that Brown was bidding on the Voting and Management Rights, rather than on the interest Brown contends was sold at the Auction – the Distribution Rights. Finally, Defendant points out that Brown knew, during the bankruptcy case, that Defendant refused to execute the amendment to the Operating Agreement, which provided that Defendant would only be entitled to the Distribution Rights and not the Voting and Management Rights. But this fact is irrelevant to the waiver contention because the exchange occurred before Plan confirmation and the Auction, at a time when the estate still held the Voting and Management Rights.

Thus the most the Defendant could argue on this record is that he believes the estate was selling the Voting and Management Rights, but Brown contends that the estate could not do so under the Operating Agreement. Brown further contends that he simply participated in an auction of assets being sold "as is, where is and without representation or warranty of any kind" and later disputed Defendant's contention of what interest was sold. The "intentional relinquishment of a known right" could not result from what was at best an uncertainty. Therefore, the Court concludes that no "reasonable [fact finder] could find in favor of the [Defendant], taking all inferences to be drawn from the underlying facts in the light most favorable to the [Defendant]." *French*, 499 F.3d at 351-52.

**Conclusion**

For the foregoing reasons, the Court will grant summary judgment in favor of Plaintiffs.

15

cc:     Brent C. Strickland, Esquire
        Kristen B. Perry, Esquire
        Whiteford, Taylor & Preston, LLP
        Seven Saint Paul Street
        Baltimore, Maryland 21202

        Brendan Collins, Esquire
        GKG Law, P.C.
        Canal Square
        1054 31st Street, N.W., Suite 200
        Washington, D.C. 20007-4492

        Morton A. Faller, Esquire
        12505 Park Potomac Avenue, Sixth Floor
        Potomac, Maryland 20854

**End of Memorandum**